## WILLIAM C. HOBSON *et al*

*v.*

## EVAN EWAN.

1. ADMINISTRATOR'S SALE OF LAND—*grant of letters.* In an action of ejectment, a sale of land by an administrator was claimed to be void on the ground that the intestate died in the State of Kentucky, and that the administrator appointed was neither a relative nor creditor, and not interested in the estate, and consequently letters could only be granted to the public administrator: *Held*, that this objection could not be raised in a collateral proceeding.

2. SAME—*presumption.* The county court being invested with complete jurisdiction of the subject of granting administration on the estates of deceased persons, its action in a case properly brought before it, however 'roneous it may be, must be regarded as valid and binding in every collateral proceeding until reversed. And where that court granted administration on the estate of one who died intestate, and was a non-resident, it will be presumed, in all collateral proceedings, that it had satisfactory evidence before it to justify its action.

3. ADMINISTRATOR'S SALE—*jurisdiction—notice of application.* The following notice was given of the presentation of a petition of an administrator for an order to sell land to pay the debts of his intestate, to-wit: "To all persons interested: Take notice, that I intend to present a petition to the circuit court at its next term, to be holden in Monmouth, in the County of Warren, and State of Illinois, on the third Monday of October, A. D. 1853, praying said court for an order to sell all of the real estate belonging to the estate of Bushnell Willey, deceased, for the purpose of paying the debts against said estate." It was signed by the administrator, and dated Monmouth, Ill., August 2, 1853, and published for the time required by the statute: *Held,* that the notice was sufficient to give the court jurisdiction.

4. Under the statute in force in 1853, the administrator had the choice of two modes by which to bring the heirs into court, the one by serving a notice, with a copy of the account and petition, on each of the heirs or their guardian, and the other by publishing a notice, to all parties interested, in the nearest newspaper. Either mode was sufficient to bring the heirs and all interested parties into court, and thus give the court jurisdiction of their persons, and in neither was it necessary to state the names of the heirs, or other interested parties, in the notice.

5. ADMINISTRATOR'S SALE—*notice of application.* An administrator's sale of real estate, under an order of court, was attacked on the trial of an action of ejectment on the ground that the notice of the application was, that he would apply for an order to sell *all* the lands of the intestate, instead of "the whole, or so much thereof as will be sufficient to pay his debts:" *Held,* that as the statute prescribed no particular form of notice, and as the notice itself fully apprised all parties interested of the nature of the application, and the time and place when and where it would be made, the objection was not tenable.

6. So, also, when such notice was directed "to all persons interested," an objection that the notice did not request all persons interested in the estate to show cause why the land should not be sold to pay debts, was considered without force. The same strictness required in applications to sell lands for delinquent taxes does not apply in proceedings of this kind.

7. SAME—*finding as to notice.* When the circuit court on the petition of an administrator for an order to sell the lands of his intestate to pay the debts of the estate, finds in its decree that due notice of the application had been given by publication, it is at least *prima facie* evidence that the notice required by law had been given.

8. ADMINISTRATOR'S SALE—*petition.* Although the statute required the administrator to state in his petition for an order to sell real estate to pay debts "what real estate the testator or intestate died seized of, or so much thereof as will be necessary to pay his or her debts," yet when a petition, after stating that there remained no personal assets, and the existence of a large indebtedness, concluded in these words: "that to pay the debts there

only remained the real estate belonging to the estate," describing it: *Held*, that the statement was equivalent to a technical allegation of seizin, and was sufficient.

9. PETITION—*names of heirs.* It is no objection that the names of the heirs are not stated in such a petition. Such omission will not invalidate the decree of sale.

10. SAME—*address.* It was objected in a collateral proceeding involving the question of title, that an administrator's petition for leave to sell lands of his intestate was addressed: "To the Hon. H. M. Wead, Judge of the Tenth Judicial Circuit, in chancery sitting," or to the equitable jurisdiction of the court: *Held*, that the petition was not addressed to the chancery side of the court, but to the judge; and that as no form was prescribed, if it contained the substantial requirements of the statute it was sufficient, and would be considered as presented and carried on under the statute.

11. SAME—*account of personalty.* Where the administrator's petition for a decree to sell real estate, avers that there was no personal estate, an objection that no account or inventory of the personal estate and debts was filed, is untenable.

12. ADMINISTRATOR'S SALE OF LAND—*proof of indebtedness.* In this case the only evidence before the circuit court of the existence of indebtedness against the estate, was a record from the county court of H. County, Ky., but the same had not been allowed by the county court in the county granting administration in this State. It was held, that if this were conceded to be error, yet it could not affect the jurisdiction of the court, and that the sale under the decree could not be questioned for such error in a collateral proceeding.

13. The statute in force in 1853, regulating sales of real estate by administrators, did not require that the court should confirm a sale made under its order.

14. STATUTE—*construed.* The word "seized" in sec. 103 of chap. of Wills, R. S. 1845, as used in reference to the lands of deceased persons, construed to mean possessed or owned. In this section and section 125, seizin and ownership are used as synonymous.

15. JUDGMENT OR DECREE—*validity in a collateral proceeding.* It matters not how erroneous the findings, judgments, and decrees of a court of general jurisdiction may be, when drawn in question collaterally, if the court had jurisdiction of the subject matter and of the parties. They can not be questioned collaterally for mere errors or irregularities.

16. REVERSAL—*effect on rights of purchaser.* The law is well settled on grounds of public policy, that the rights of persons, not parties to the record, or privies, acquired under judicial sales, when the court had jurisdiction, will not be affected by a subsequent reversal of the decree or order under which they were acquired.

17. ACKNOWLEDGMENT OF DEED. An objection that a deed admitted in evidence was defectively acknowledged will be obviated by proof of its execution.

18. ADMINISTRATOR'S DEED—*to an assignee.* On the trial of an action of ejectment, an administrator's deed was objected to, because it was not made to the purchaser at the sale, but to his assignee: *Held,* that this objection could not be made by the heirs of the intestate or those claiming under them. The title claimed by them was divested by the sale, and they had no interest in the question whether the purchaser or his assignee was entitled to the conveyance.

APPEAL from the Circuit Court of Warren County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. GOUDY & CHANDLER, and Mr. J. M. KIRKPATRICK, for the appellants.

Messrs. MILLER, FROST & LEWIS, and Mr. JOHN J. GLENN, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The points made by appellants on this record, have been decided adversely to them by this court, as reference to cases will show.

Their first point is, that the decree of the Warren circuit court, and the sale thereunder to Duhme, and the deed by the administrator to Love, are null and void.

This point is based on the fact that, as the intestate died in the State of Kentucky, possessed of lands in this State, the statute then in force required administration on his estate to be committed to the public administrator, on the application of any person interested therein, if the deceased had no relative or creditor in this State, or having any, they declined to take the administration.

Paine, it is said, was neither a relative nor creditor, and not interested in the estate; his appointment was void, consequently, all acts done by him as such, are also void.

We do not think this objection, if it be one, can be raised here. If urged before the court granting the letters, it might

150          HOBSON *et al. v.* EWAN.          [Sept. T.,

Opinion of the Court.

have prevailed. That court was clothed with full power in the matter, and had complete jurisdiction over the subject; and, having acted, though erroneously, it may be, its action must be regarded as valid and binding in every collateral proceeding. Until the letters granted to Paine are revoked, they must be operative and effectual for the purposes intended. We must, in this proceeding, presume the court granting the letters, had satisfactory evidence before it to justify its action. There may have been facts before that court, calling it into action, which the law does not require should be preserved in the record, or in any other manner. *Schnell* v. *City of Chicago,* 38 Ill. 390. The case of *Bowles' heirs* v. *Rouse, Adm'r* 3 Gilm. 409, cited by appellants' counsel, was a direct proceeding to reverse the order of sale, and can not apply to this case.

The next point made by appellants is, a want of power in the circuit court to render the decree, jurisdiction not having been acquired of the person, or subject matter, as required by the statute.

We are at a loss to perceive wherein the circuit court failed to obtain jurisdiction in this case, both as it regards the persons of the heirs, and of the subject matter. The initiatory proceedings are in substantial compliance with the requirements of Section 103, Ch. 109, Title " Wills," and seem to meet all its demands. A petition was filed in the proper court by the administrator, stating the purpose, and notice by publication to the heirs was given. The statute gives the administrator the choice of two modes by which to bring the heirs into court ; the one is, by serving a written or printed notice of the application, together with a copy of the account and petition on each of the heirs, or their guardians ; the other is, by publishing a notice to all parties interested, in the nearest newspaper for three weeks successively, so that they may come in and show cause why the land should not be sold according to the prayer of the petition. One mode is as efficacious as the other, to bring the heirs and all interested parties into court, and thus give jurisdiction to the court. Whichever mode may be adopted, in neither is it required that the names of the heirs or other interested parties shall be inserted in the notice.

The notice was as follows:

To all persons interested, take notice that I intend to present a petition to the circuit court at its next term, to be holden in Monmouth, in the county of Warren, and State of Illinois, on the third Monday of October, A. D. 1853, praying said court for an order to sell all of the real estate belonging to the estate of Bushnell Willey, deceased, for the purpose of paying the debts against said estate. Signed by the administrator, and dated, "Monmouth, Illinois, August 2d, 1853." This notice was published for the time required by the statute.

As to the petition, the requirement is, that "the administrator shall make out a petition to the circuit court of the county in which administration shall have been granted, stating therein what real estate the testator or intestate died seized of, or so much thereof as will be necessary to pay his or her debts as aforesaid, and request the aid of the court in the premises."

This is all the statute requires shall be stated in the petition, and this court can require no more. The petition in question fulfills this requirement, with this difference, it does not state the intestate died seized of the lands described in the petition, or of any lands. The allegation is, after stating the personal assets were exhausted and a large balance remained due by the intestate, "that to pay the debts there only remained the real estate belonging to the estate," describing it.

No technical seizin is alleged in the intestate, but we do not consider that important, so long as there is found an allegation equivalent to it. Seizin, in fact, is understood to be actual possession of land, but in the sense in which the legislature used it, ownership of land was meant—land which the deceased owned in his life-time—that which belonged to him, and into the possession of which he had a right to enter. It is well known there are very many cases of large landed proprietors dying who never saw their lands, yet they were seized in law because they had the title and a right to the actual possession. In this sense the term was used in section 103, as is fully shown by section 125, which provides, whenever it shall appear that the personal estate of any person deceased is insufficient to dis-

charge the debts of such estate, and there is real estate belonging to the same, the court of probate shall make out an abstract from the record of the debts and credits of such estate, and of the lands owned by such testator or intestate from the inventory of such estate, whether the title be complete or not, etc.   Seizin and ownership are used as synonymous.

That the heirs are not named in the petition is no objection. It was intimated in the case of *Turney* v. *Turney*, 24 Ill. 625, otherwise, but on further consideration it was held in *Gibson* v. *Roll*, 27 id. 88, and subsequently in *Stow* v. *Kimball*, 28 id. 93, and *Morris* v. *Hogle*, 37 id. 155, the omission to name the heirs did not invalidate the decree of sale.

As to the objection that the notice of the administrator is, that he will apply for an order to sell all the lands of the intestate, instead of "the whole, or so much of them as will be sufficient to pay his debts," it is sufficient in answer to say, that the statute prescribes no particular form of notice.   It is for the court to judge of its sufficiency.   The notice itself, fully apprizes all parties interested of the nature of the application, and the time and place when and where it will be made.   On hearing the allegations and proofs the court may, in its discretion, restrict the sale to a portion only of the lands.

Nor do we perceive the force of the objection that the notice did not request all persons interested in the estate to show cause why the land should not be sold for the purpose of paying the debts.   The notice was directed to "all persons interested," and if they deemed it important to be present they could appear without any other request.   The notice was in fact a request to them to appear.

This court held, in *Charles* v. *Waugh*, 35 Ill. 315, that a notice by a collector of taxes on an application for judgment against delinquent lands, which omitted to state that an order of sale would be applied for at the time application for judgment should be made, was insufficient, for the reason, land owners would not be stimulated to the same diligence they would be if they were notified that an order to sell their land would be applied for and would follow the judgment.   It has always been

held in cases of sales of land for taxes, by which the estate of one man may be divested and transferred to another, every material provision of the statute must be complied with. The notice in question did not comply with the statute, and, therefore, no power existed in the court to grant an order of sale. The same strictness has not been required in proceedings of the kind we are now considering.

The sufficiency of this notice in all its particulars, has been adjudicated upon in the original proceeding, the court having found by its decree that it appeared to the court that due notice of its pendency had been given by publication, etc. This recital is *prima facie* evidence at least that the notice required by law had been given. *Goudy et al.* v. *Hall,* 30 Ill. 109; *Finch* v. *Sink,* 46 id. 169.

The objection that this proceeding was addressed to the equitable jurisdiction of the circuit court, and was not an application under the statute, is without force. It matters not how informal the proceeding may be, as the statute prescribes no particular form. If the substance is in the petition, it will suffice, however much incongruous matter may get into it. It is evident from the whole tenor of the proceedings, from the notice to the final order of sale, they were instituted and carried on under the statute. The case of *Cost* v. *Rose,* 17 Ill. 276, cited in support of this objection, was a proceeding in partition in regard to which, as was said in *Goudy* v. *Hall,* 36 id. 313, the court had both a statutory and general chancery jurisdiction, and the address of the bill was then held, as it was addressed to the court " in chancery sitting," to indicate the intention of the party as to which jurisdiction he sought to call into action. As was said in the last cited case, so here, the court could not take jurisdiction of an administrator's petition of this specific character, and grant the particular relief sought, except by virtue of the statute; and the petition clearly shows it was the statutory power of the court that was invoked. And it was further said the action of the court, when collaterally called in question, will be referred either to its general or its statutory powers, as may be necessary to sustain its

jurisdiction and without reference to such a mere matter of form as the address of the petition.

The petition in question is not addressed to the chancery side of the court, but to the judge of the court, in the usual form.

The rule is well settled in this court that a petition is sufficient if it states enough to require the court to act. *Iverson* v. *Loberg,* 26 id. 179.

The objection that no account of the personal estate and debts was filed by the administrator, is answered by the fact that it is averred in the petition there was no personal estate, and that the unpaid debts amounted to about $10,000. But it is objected those debts had not been presented and allowed by the probate court. The only evidence to establish the existence of those debts was the record from the county court of Harrison County, Kentucky, which, under the act of Congress, has the same force and effect, if properly authenticated, in this State that it had in the State of its origin.

It may be admitted, for the purpose of this case, that the circuit court erred in holding it was unnecessary, to an order of sale, that the debts should be presented and allowed by the probate court of Warren County; but that does not affect the question of jurisdiction. The jurisdiction being established, no matter how erroneous the finding of the court may be, the finding is not void, and can not be questioned in a collateral proceeding. This is the universal rule in all courts of common law. *Buckmaster* v. *Carlin,* 3 Scam. 104; *Swiggart* v. *Harber,* 4 id. 364; *Rockwell* v. *Jones,* 21 id. 279; *Chestnut* v. *Marsh,* 12 id. 173; *Weiner* v. *Heintz,* 17 id. 259; *Horton* v. *Critchfield,* 18 id. 133; *Iverson* v. *Loberg, supra; Goudy* v. *Hall, supra.* The later cases are *Wimberly* v. *Hurst,* 33 Ill. 166; *Wight* v. *Wallbaum,* 39 id. 555; *Elston* v. *City of Chicago,* 40 id. 514; *Mulford* v. *Stalzenback,* 46 id. 303; *Huls* v. *Buntin,* 47 id. 396.

This court said in this case, when before us in a direct proceeding to reverse the order of sale, that the order was made in a case not contemplated by the statute, and for pay-

ing supposed debts with which the administrator had not the remotest concern. *Hobson et al.* v. *Payne*, Adm'r. 45 Ill. 158.

The amount of which is, simply, that the court erred in ordering a sale to pay such debts, but having jurisdiction of the subject, its judgment was not void, but erroneous only. The case of *Stow* v. *Kimball*, 28 Ill. 110, is decisive on this point.

The objection that no account or inventory was filed by the administrator, is answered by the fact that the petition alleges there was no personal estate; of course no account could be made of that which was not; nor could any inventory be made. But these matters are not jurisdictional. Most of the cases cited by appellants are in direct proceedings to reverse for error.

The point that the decree was erroneous and has been reversed, leaving Duhme, the purchaser, not in a condition to hold the title, nor the persons claiming under him, is not tenable. In *Goudy* v. *Hall*, 36 Ill. 313, this court said, if the court has jurisdiction to render the judgment or to pronounce the decree, that is, if it has jurisdiction over the parties and the subject-matter, then, upon principles of universal law, acts performed and rights acquired by third persons under the authority of the judgment or decree, and while it remains in force, must be sustained, notwithstanding a subsequent reversal. The necessity of this rule, as founded upon important considerations of public policy, is too apparent to admit of dispute. When the validity of acts done under a judicial proceeding is collaterally called in question, we have to look only to the jurisdiction, and if that is found to have existed, then it matters not how erroneous the proceedings of the court may have been, the rights of third persons, acquired while such proceedings were unreversed, and, by virtue of them, must be protected. A great number of cases are there referred to, and we desire to add nothing to what is said in them. The point is made that the parties here were not shown to be *bona fide* purchasers, and that the reversal of the judgment takes away their rights. The question of the good faith of the transaction is not in the case, and we

know of no rule of law requiring it to be shown in a case of this kind. Good faith is presumed until the contrary is shown. A purchaser under an execution issued upon a judgment in his own favor, is, equitably, bound to make restoration to the judgment debtor on a reversal of the judgment, because he is a privy and a party to the error, and equity will not allow him to profit by his own error. The present defendants in the ejectment, are, so far as we know, innocent purchasers without notice of any infirmity in the title. Whatever irregularities may have occurred between the administrator and the purchaser, they are not jurisdictional, and, on well established principles, can not affect them. The purchaser at the administrator's sale satisfied the administrator as to the payment of his bid, and if the administrator in his acts, in this regard, did not conform in all respects to the law, he may be responsible to the creditors and to others having an interest therein. These defendants have been in possession of these lands many years, making valuable improvements thereon, and have strong equities in their favor, which courts must respect.

As to the objection that the sale by the administrator has not been confirmed by the court, and that the court refused to confirm it, on a motion for that purpose, it is sufficient to say the statute, authorizing the sale, does not require the subsequent confirmation of the court. It is not necessary to the validity of the sale. *Stow* v. *Kimball, supra. Reynolds* v. *Wilson,* 15 Ill. 394, cited by appellants, was a direct proceeding by writ of error from the original decree overruling a motion for confirmation of the sale, and has no bearing on the question before us.

The remaining objections are: 1. That the deed of the administrator to Love was not acknowledged according to law. This is obviated by the testimony of the grantor of the actual execution of the deed. 2. The deed was not executed to Duhme, the purchaser, but to his assignee, Love. In *Dickerman* v. *Burgess,* 20 Ill. 275, we said the sheriff could not execute a deed to a stranger, and reference was

made to *Davis* v. *McVickers*, 11 id. 329, where it was held such deed must be made to the purchaser or to the assignee of the certificate of purchase, or in case of the death of the purchaser to his legal representatives.

Love was the assignee of the certificate of purchase, and it was wholly immaterial to appellants to whom the deed was made, their title having been divested by the sale. They have no interest in the question. If there can be a question raised on this point it must be between the purchaser and the assignee.

We have examined and disposed of all the points raised on this record, and, as we said at the outset, they have been decided adversely to appellants, by numerous decisions of this court, in which we express our full concurrence.

There being no error in this record the judgment must be affirmed.

*Judgment affirmed.*

WALKER, J., took no part in the decision of this case, as he tried the case in which the decree for the sale of the land was rendered.